Filed 3/27/24  In re M.S. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re M.S. et al., Persons Coming Under the Juvenile Court Law. | B326996 (Los Angeles County Super. Ct. No. 22LJJP00421) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.F., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore.  Reversed in part and affirmed in part.

1

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

T.F. (Mother) appeals the juvenile court's jurisdiction and disposition orders concerning the dependency of two of her children pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b) and (j),[1] contending substantial evidence supports neither the juvenile court's jurisdictional findings on substance abuse and physical abuse counts nor its dispositional orders.  We agree only as to jurisdiction based on Mother's physical abuse.  In all other respects, we affirm.

## BACKGROUND

### A.     Prior Dependency Proceedings

Four prior section 300 petitions concerning four of Mother's other children were sustained in 2007 and 2009.

In January 2007, a section 300 petition concerning sibling T.F. was sustained based on gang activity at Mother's residence and her "mental and emotional problems, including a diagnosis of Attention Deficit Hyperactivity Disorder," and based on her failure to take prescribed psychotropic medication.

In 2009, a section 300 petition was sustained concerning sibling T.S. based on domestic violence between Mother and her male companion and based on Mother's substance abuse history. Reunification services were bypassed.

_____

[1] Unless indicated otherwise, statutory references are to the Welfare and Institutions Code.

Also in 2009, a petition was sustained regarding sibling D.F. after the child was born with a positive toxicology screen for methamphetamines. Neither parent was granted reunification services, and their parental rights were terminated.

A 2009 petition regarding sibling H.F. was also sustained based on Mother's substance abuse, which included current abuse of methamphetamine and opiates, her drug use while pregnant, and positive toxicology screen for methamphetamines and opiates at H.F.'s birth. In January 2012, the court terminated parental rights.

## B. Present Proceedings

The family currently comprises Mother, her six- and eight-year-old sons, M.S. and M.F., M.S.'s father David S. (Father), and M.F.'s father, Carl C. Neither father is party to this appeal.

On August 8, 2022, a concerned party performing a wellness check reported that Mother was under the influence of an intoxicant and did not know where her children were.

M.S. reported that Mother "whoops him with a black belt on his bottom," and one time, about a year prior, hit him with a "shoe on the face" because she was angry that he had gone outside without permission. He reported that it hurt but he did not cry and did not receive any marks from the shoe.

V.B., a maternal aunt who was raising a child removed from Mother due to her methamphetamine use, reported that M.S. once told her that Father punched him in the stomach for dropping his phone about one year prior, and also that Mother gave him "whoopings" and he did not want to go back home.

M.F. reported that Mother spanked him twice with a belt, but could not remember when.

3

Father, who lived out of the area, reported that the children would live with him for weeks at a time.  Father denied the corporal punishment allegations, and denied that Mother currently used drugs or was unable to care for the children.  After the initial interview with the Department of Children and Family Services (DCFS or the department), M.S. went to live with Father.

Mother admitted to lightly spanking the children on prior occasions with an open hand on the buttocks area two or three times but denied using a belt, leaving marks or bruises on the children, or hitting M.S. with a shoe.

V.B., the maternal aunt, reported that she had asked Mother to enter into drug rehabilitation, but Mother was in denial.  She stated, "Based on past behavior in the month of August, [Mother] seemed to be under a narcotic.  Her behavior was not normal that day.  I have seen her on two occasions where I could tell she is under the influence of drugs."  V.B. reported that the last time she had contact with Mother, her "eyes were dilated and she didn't look like herself.  She didn't know where the children were. . . .  Her behavior was off."

Mother at first denied but later admitted having a drug history, and admitted to currently smoking marijuana outside the children's presence.  She also admitted to taking Norco, which was not prescribed and which she purchased on the street, for migraines, but denied taking any other drugs.  Mother admitted the children were not enrolled in school.

DCFS reported Mother was not taking her sons to their doctor appointments; her sons had asthma; and Mother had said she used one Albuterol inhaler for herself and both children.

DCFS also reported the children's immunizations were not up to date, preventing them from enrolling in school.

On September 9, Mother tested positive for high levels of amphetamine (1535 ng/ml), methamphetamine (5520 ng/ml), benzoylecgonine (>5000 ng/ml) and marijuana metabolite (126 ng/ml). Mother denied using anything but marijuana, but said that Norco she purchased on the street might contain the other substances without her knowledge.

Two weeks later, on September 22, 2022, DCFS obtained a protective custody warrant but could not serve it because Mother refused to come to the door or answer her phone.

DCFS filed a section 300 petition, alleging, as amended and ultimately sustained, in counts (a)-1, (b)-3, and (j)-3 that Mother physically abused M.S. by striking his face with a shoe, and in counts (b)-1 and (j)-1 that Mother was a current abuser of amphetamine, methamphetamine, Norco, hydrocodone and marijuana, which rendered her incapable of caring for or supervising the children and put them at substantial risk of serious physical harm.

M.S. was detained with Father, but the location of M.F. was at first unknown. Although Mother reported he was with Carl C., she purported not to know where Carl C. lived. M.F. was ultimately placed with a maternal aunt.

At the jurisdiction/disposition hearing on January 17, 2023, the court credited M.S.'s account of Mother throwing a shoe at him and found that she failed to adequately address her substance abuse issues.

The court declared the children dependents and found there were no reasonable means to protect them without removal from Mother's custody. It placed M.S. with Father and M.F. with the maternal aunt. The court ordered reunification services for

Mother and ordered monitored visitation for at least nine hours a week.

Mother appeals.

After Mother filed her notice of appeal, the juvenile court terminated dependency jurisdiction concerning M.S. and issued a custody exit order awarding Father sole physical custody, ordering that Mother have monitored visits nine hours per week, monitored by an agreed upon monitor or a professional monitor paid for by Mother. Mother appealed that decision. Regarding M.F., the court ordered that Mother be provided additional family reunification services and set a section 366.21, subdivision (f) review hearing for January 17, 2024.[2]

## DISCUSSION

### A. Jurisdictional Findings

Mother contends no substantial evidence supports the juvenile court's true finding on the substance abuse and physical abuse counts, and therefore the jurisdictional finding should be reversed. We agree as to the substance abuse counts but disagree as to the physical abuse counts.

#### 1. Pertinent Law

Subdivision (b)(1) of section 300 authorizes dependency jurisdiction, in part, when (1) a child is at a substantial risk of suffering serious physical harm or illness, (2) as a result of, (3) a parent's "inability . . . to provide regular care for the child due to the parent's . . . substance abuse." A juvenile court may take jurisdiction pursuant to section 300, subdivision (b) only if there

---

[2] Neither of these developments moots the current appeal. (See *In re E.T.* (2013) 217 Cal.App.4th 426, 436 [issue not moot if the purported error infects the outcome of subsequent proceedings].)

is a present risk of the child suffering serious physical harm or illness in the future.  (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388; § 300, subd. (b).)

"Substance abuse" means, "essentially, the excessive use of drugs or alcohol."  (*In re N.R.* (Dec. 14, 2023, S274943) __ Cal.5th 2, 16, 42.)  "[F]or dependency jurisdiction to exist due to substance abuse pursuant to section 300(b)(1)(D), this abuse must render a parent or guardian unable to provide regular care for a child and either cause the child to suffer serious physical harm or illness or place the child at substantial risk of suffering such harm or illness."  (*Id.* at p. 2.)

Subdivision (a) of section 300 authorizes dependency jurisdiction when a child has suffered serious physical harm inflicted nonaccidentally by a parent.

A parent has a right to reasonably discipline by punishing a child.  "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necessar[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' "  (*In re D.M.* (2015) 242 Cal.App.4th 634, 641.)

A current risk of harm can be shown by evidence of past conduct if there is a reason to believe the conduct will recur.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.)

Subdivision (j) of section 300 authorizes dependency jurisdiction when the child's sibling has been abused or neglected, as defined in subdivision (a) or (b), and there is a substantial risk that the child will be abused or neglected.

We review jurisdictional and dispositional orders for substantial evidence.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.  [Citations.]  ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' "  (*Ibid*.)

### 2.    Application

Here, Mother had a history of sobriety and relapse.  Ten years after losing parental rights over two of her children due to substance abuse, Mother appeared to V.B. to be under the influence of an intoxicant, tested positive for drugs, admitted to using marijuana, and was twice unable to disclose the location of M.S. or M.F. or both.  She denied using hard drugs and attempted to blame the positive test on impurities in a street drug she had purchased.

The court could reasonably conclude from this evidence— indeed from the positive drug test alone—that Mother was currently abusing drugs.

8

The court could also reasonably conclude Mother's drug abuse endangered the children, because V.B. reported that on a day in August 2022, Mother appeared to be intoxicated and did not know where the children were. That Mother did not know where the children were when she was apparently intoxicated reasonably supports a nexus between her drug abuse and a risk to the children. That Mother has failed to resolve longstanding drug abuse issues which caused her to lose custody of two prior children is of great concern with respect to her ability to care for M.S. and M.F.

However, no substantial evidence supported the allegations that Mother's physical abuse of M.S. endangered either child. Although M.S. reported that Mother hit him in the face with a shoe when he went outside without permission, and striking a young child in the face with a shoe in response to his going outside without permission is neither "disciplinary" nor "warranted by the circumstances" nor "reasonable" (see *In re D.M.*, *supra*, 242 Cal.App.4th at p. 641), this isolated incident occurred more than a year before the petition was filed, and no evidence suggested it would reoccur (see *In re A.L.* (2017) 18 Cal.App.5th 1044).

## B.  Disposition Orders

Mother contends DCFS failed to properly state its reasonable efforts to prevent removal of the children from her home, and the juvenile court consequently erred by failing to consider reasonable alternatives or to make explicit findings regarding removal. She argues her visits should be unmonitored.

### 1.  Applicable Law

A juvenile court "may make any and all reasonable orders for the . . . custody" of a dependent child. (§ 362, subd. (a).)

9

"[O]ur dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interests." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 530.)  Removal " 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent.' " (*In re Dakota J.* (2015) 242 Cal.App.4th 619, 629.)

Thus, the court may order that the child be removed from the physical custody of a parent only if it finds by clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or emotional well-being of the child if he or she were returned to the parent, and reasonable means exist to protect the child without removal.  (§ 361, subd. (c).)  " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.' " (*In re A.S.* (2011) 202 Cal.App.4th 237 247.)  In determining risk of harm, a court may consider the parent's past conduct as well as present circumstances.  (*Ibid.*)

"Clear and convincing" evidence must be "so clear as to leave no substantial doubt," and "sufficiently strong to command the unhesitating assent of every reasonable mind." (*In re Angelia P.* (1981) 28 Cal.3d 908, 919.)  The difference between the two burdens of proof may result in a reviewing court affirming a jurisdictional order but reversing the dispositional order removing the child from the home.  (*In re Haley T.* (2012) 212 Cal.App.4th 139, 148.)

If DCFS recommends removal of a child from the home, the social study must include "A discussion of the reasonable efforts

10

made to prevent or eliminate removal . . . ."  (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).)

If a juvenile court orders a child removed pursuant to section 361, "The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home"; and: "The court shall state the facts on which the decision to remove the minor is based."  (§ 361, subd. (e).)

If a child is removed from a parent, visitation between the two must be as frequent as possible, consistent with the well-being of the child.  (§ 362.1, subd. (a)(1)(A).)  "No visitation order shall jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(B).)

### 2.    Application

Mother argues there was no substantial evidence of danger to the children should they be retained in her care, nor evidence that no reasonable alternatives to removal existed.  We disagree.

Here, there was evidence that Mother lost track of her children at least once while intoxicated, and it was uncontested that she later tested positive for high levels of methamphetamine, amphetamine, benzoylecgonine, and marijuana metabolites.  Within two weeks of this positive test, Mother concealed the children's location from DCFS and law enforcement, and when DCFS filed the instant petition, she purported not to know where M.F. was.

During it all, Mother denied using any drug except marijuana and an illegal street drug, claiming the other drugs were possible contaminants from the street drug.

These facts, along with Mother's troubling drug and dependency history, including her pattern of relapse and denial, were discussed at length in DCFS's reports and by the juvenile

11

court at the jurisdiction/disposition hearing.  They constituted substantial evidence that no reasonable means existed to keep the children safe in her unmonitored care.

Mother argues that the alternative of "strict supervision," which she defines as including regular unannounced visits by DCFS, would reasonably ensure the children's safety.  We agree that strict supervision is required but disagree that the juvenile court was obligated to find regular unannounced DCFS visits to be strict enough.  DCFS cannot be the arbiter of Mother's drug use—only she can.  The department's presence on the scene during unannounced visits would leave the children at risk during all the time DCFS could not be present.  The court reasonably concluded that the children could be adequately protected only in the context of monitored visitation.

## DISPOSITION

The juvenile court's orders are reversed as to the jurisdictional findings based on counts (a)-1, (b)-3, and (j)-3 but otherwise affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

12